UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
———————————————————--X
**FATOU TANDIAN,**

                **Plaintiff,**        Civil Action No.: 5:24-cv-1194 (FJS/TWD)

**Against**                                    **COMPLAINT**

**STATE UNIVERSITY OF NEW YORK
UPSTATE MEDICAL UNIVERSITY,**

                **Defendant.**
———————————————————X

        **FATOU TANDIAN** "Plaintiff," by and through her undersigned counsel, The Mermigis Law Group, P.C., files this Complaint against **STATE UNIVERSITY OF NEW YORK UPSTATE MEDICAL UNIVERSITY, "Defendant"** and for her Complaint she alleges as follows:

## STATEMENT OF FACTS

        1.      Plaintiff, Fatou Tandian, was employed by Defendant, State University of New York, Upstate Medical University ("SUNY") as a Teaching and Research Center Nurse.

        2.      On August 5, 2021, CDC Director Dr. Rochelle Walensky told CNN's Wolf Blitzer that the Covid-19 vaccine cannot prevent the transmission of the disease. https://www.thegatewaypundit.com/2021/08/cdc-director-tells-cnn-covid-vaccines-cant-prevent-transmission-video/.

        3.      Since, according to the CDC, the COVID vaccines do not prevent the infection or transmission of COVID, while at the same time, also according to the CDC, they result in a

1

massively anomalous (1000% higher) number of adverse events and deaths, there is no justification in the law for mandating them.

4. The vaccines only reduce symptoms of those who are infected by COVID, but not transmission of the virus. They are, therefore, treatments, and not vaccines as that term has always been defined in the law.

5. The CDC has actually changed its definitions of "vaccine" and "vaccination" to fit with the currently-available COVID Vaccines. Until recently, the Centers for Disease Control defined a "Vaccine" as: "A product that stimulates a person's immune system to produce immunity to a specific disease, protecting the person from that disease."[1]

6. The CDC also previously defined "Vaccination" as: "The act of introducing a vaccine into the body to produce immunity to a specific disease."[2]

7. But on September 1, 2021, the CDC quietly rewrote these definitions. It changed the definition of a "Vaccine" to: "*preparation that is used to stimulate the body's immune response against diseases*." It changed the definition of "Vaccination" to: "*The act of introducing a vaccine into the body to produce protection from a specific disease.*"[3]

8. The CDC has eliminated the word "immunity" from its definitions of "Vaccine" and "Vaccination." The CDC did so because it recognizes that the COVID Vaccines do not produce immunity to COVID-19.

---

[1] https://web.archive.org/web/20210826113846/https://www.cdc.gov/vaccines/vac-gen/imz-basics.htm

[2] id.

[3] https://www.cdc.gov/vaccines/vac- gen/imz-basics.htm

9. This is a critical factual and legal distinction. Legal authority to mandate medical treatment only derives under public health regulations. As the CDC holds that Delta is the only strain; that the shots do not stop the transmission of Delta; and that vaccination is mere "protection" against a disease and not "immunity" against the disease; there is no public health basis for mandating vaccination.

10. Since, according to the CDC, the COVID vaccines do not prevent the infection or transmission of COVID, while at the same time, also according to the CDC, they result in a massively anomalous (1000% higher) number of adverse events and deaths, there is no justification in the law for mandating them.

11. (On or about August 18, 2021, the former New York State Department of Health Commissioner ("the DOH Commissioner"), Howard Zucker, issued a public health declaration mandating that all individuals working in healthcare facilities throughout New York State must be vaccinated against COVID-19 unless a medical or religious exemption was granted ("the DOH Mandate").

12. Defendant implemented a mandatory Covid-19 vaccination policy effective September 27, 2021.

13. During the Fall of 2021, Defendant, Governor Kathleen Hochul, made several public statements of a religious nature essentially endorsing COVID-19 vaccination as an acceptable religious practice.

14. Beginning on November 24, 2021, the DOH Mandate prohibited anyone who could not receive any COVID-19 vaccine(s) due to religious reasons from seeking an exemption

from the mandatory COVID-19 vaccination requirement if the individual worked in a healthcare facility with face-to-face interaction with patients and/or other personnel.

15. The Supreme Court has recognized federal equity jurisdiction over declaratory and injunctive relief actions to prohibit enforcement of state or municipal orders alleged to violate federal law. *Coalition v. Zibelman*, 272 F. Supp. 3d 554, 563-4 (S.D.N.Y. 2017); *Friends of the E. Hampton Airport v. Town of E. Hampton*, 841 F. 3d 133, 144 (2d Cir. 2016). Federal Register/Vol. 86, No. 212/Friday, Nov. 5, 2021/Rules and Regulations, 86 Fed. Reg. 61555, p. 61555-61627 ("the CMS Mandate") "require[s] that providers . . . establish and implement a process by which staff may request an exemption from COVID-19 vaccination requirements based on applicable Federal Law." 86 Fed. Reg. at 61572. "Certain . . . religious beliefs, observances, or practices, may provide grounds for exemption." 86 Fed. Reg. at 61572.

16. Per the CMS Mandate, "[a]pplicable staff of the providers . . . must be able to request an exemption from these COVID-19 vaccination requirements based on an applicable Federal law, such as . . . Title VII . . . ." 86 Fed. Reg. at 61572.

17. The CMS Mandate contains a compliance provision requiring healthcare facilities to maintain information regarding COVID-19 vaccination, including the allowance of both medical and religious exemptions. 86 Fed. Reg. at 61573-4.

18. A facility that fails to comply with the CMS Mandate may be subjected to monetary penalties, denial of payment for new admissions, etc. 86 Fed. Reg. at 61573-4.

19. Upon information and belief, any healthcare facilities in N.Y.S. including the Defendant, SUNY, which participate in the Medicare and/or Medicaid programs are subject to complying with the CMS Mandate.

20. However, there is a direct conflict between the DOH Mandate and the CMS Mandate.

21. As a result of the DOH Mandate, it is impossible for SUNY to comply with both the federal law and likewise the state law. See *We the Patriots,* 17 F. 4th at 290-291; also see per e.g. *Cantero v. Bank of Am.*, 49 F. 4th 121, 130, 2022 U.S. App. LEXIS 25864 (2d Cir. 2022).

22. In *Biden v. MO.*, 142 S. Ct. 647, 652-653 (2022), the Supreme Court confirmed that the Secretary of the Department of Health and Human Services has the statutory authority to implement the CMS Mandate. While conversely, a New York State Court essentially determined that the DOH Commissioner did not have the authority to implement and enforce the DOH Mandate.

23. Nevertheless, healthcare facilities in New York State, including the Defendant SUNY ignored the applicability of the CMS Mandate and relied upon the DOH Mandate to deny employees, such as Plaintiff, a religious exemption from mandatory COVID-19 vaccination. As such, Supremacy Clause claim is viable.

24. Plaintiff was suspended and placed on Leave without Pay on September 28, 2021. Plaintiff's requests for a Religious Accommodation were denied on October 4, 2021 and October 28, 2021.

25. Plaintiff was officially terminated on June 16, 2022.

## PARTIES

26. Plaintiff currently resides in the Northern District of New York.

27. Plaintiff was employed by UPSTATE for all relevant time periods herewith.

28. UPSTATE is a public hospital agency with a principal place of business located at 750 East Adams Street, Syracuse, New York 13210.

## JURISDICTION AND VENUE

29. This Court has jurisdiction pursuant to 28 U.S.C. §1331 as it arises under the U.S. Constitution and the laws of the United States. This action presents a federal question pursuant to 42 U.S.C. §1343(a) (3)-(4) as it involves questions of federal law.

30. Plaintiff also seeks declaratory relief as authorized by 28 U.S.C. §§ 2201 and 2202, pursuant to Federal Rules of Civil Procedure 57 and 65, and the general legal and equitable powers of this Court, which empower this Court to grant the requested relief.

31. Venue is proper within this judicial district and division, pursuant to 28 U.S.C. §1391(b), because relevant events occurred in this jurisdictional district.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE FOURTEENTH AMENDMENT
## SUBSTANTIVE DUE PROCESS -- 42 U.S.C. § 1983

32. Plaintiff re-alleges all allegations set forth elsewhere in this Complaint as if fully set forth herein.

33. The Vaccine Mandate violates the liberty protected by the Fourteenth Amendment to the Constitution, which includes rights of personal autonomy, self- determination, bodily integrity and the right to reject medical treatment.

34. The COVID vaccines are not vaccines, as that term has traditionally been understood, but are, as a factual matter, treatments. They are referred to herein as vaccines, but they are not. They are treatments. Indeed, the CDC even recently changed its own definitions of "Vaccine" and "Vaccination" to eliminate the word, "immunity."

35. The ability to decide whether to accept or refuse medical treatment is a fundamental right.

36. Accordingly, the Vaccine Mandate violates Plaintiff's constitutional right to decisional privacy with regard to medical treatment.

37. Because the COVID vaccines are not treatments, and not vaccines, strict scrutiny applies. The US Supreme Court has recognized a "general liberty interest in refusing medical treatment." *Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 278, 110 S. Ct. 2841, 2851, 111 L.Ed.2d 224, 242 (1990). It has also recognized that the forcible injection of medication into a non-consenting person's body represents a substantial interference with that person's liberty. *Washington v. Harper*, 494 U.S. 210, 229, 110 S. Ct. 1028, 1041, 108 L.Ed.2d 178, 203 (1990), see also id. at 223 (further acknowledging in dicta that, outside of the prison context, the right to refuse treatment would be a "fundamental right" subject to strict scrutiny).

38. As mandated medical treatments are a substantial burden, Defendants must prove that the Vaccine Mandate is narrowly tailored to meet a compelling interest.

39. No such compelling interest exists because, as alleged above, the COVID vaccines are not effective against the now dominant Delta variant of COVID in that they do not prevent the recipient from becoming infected, getting reinfected, or transmitting COVID to others. Indeed, evidence shows that vaccinated individuals have more COVID in their nasal passages than unvaccinated people do. The Delta variant was the current variant and accounted for over 90% of the COVID infections in the United States at this time.

40. The COVID vaccines may have been somewhat effective against the original COVID strain, but that strain has come and gone, and the COVID vaccines— designed to fight yesterday's threat—are simply ineffective against the current Delta variant.

41. Since the COVID vaccines are ineffective against the Delta variant, there can be no compelling interest to mandate their use at this time.

42. But even if there were a compelling interest in mandating the COVID vaccinations, the Vaccine Mandate is not narrowly tailored to achieve such an interest.

43. The blanket Mandate ignores individual factors increasing or decreasing the risks that the plaintiffs—indeed, all health care employees—pose to themselves or to others.

44. Defendants entirely disregard whether employees have already obtained natural immunity despite the fact that natural immunity does actually provide immunity whereas the COVID vaccines do not.

45. Treating all employees the same, regardless of their individual medical status, risk factors, and natural immunity status is not narrowly tailored.

46.	Indeed, even if the test set forth in *Jacobson* was the appropriate standard, which it is not, the Vaccine Mandate would still fail to satisfy that standard for the reasons set forth above.

47.	"[I]f a statute purporting to have been enacted to protect the public health, the public morals or the public safety, has no real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution." *Jacobson v. Massachusetts,* 197 U.S. 11, 31, 25 S. Ct. 358, 363, 49 L.Ed. 643 (1905).

48.	As set forth above, the risk of death from COVID is extremely low.

49.	The available vaccines for COVID generally do not confer sterile immunity. Rather, they simply lessen the severity of symptoms for individuals who receive them. They are actually a prophylactic treatment for COVID and not a vaccine at all.

50.	COVID vaccines cripple the immune systems of some of those to whom they are administered and also create vaccine-based dependencies.

51.	Assuming for the purposes of argument that PCR tests are effective, then an adequate alternative to vaccination exists.

52.	Given these facts, as more fully set forth above, the Vaccination Mandate has no real or substantial relation to public health or is beyond all question, a plain, palpable invasion of rights secured by the fundamental law. Alternatively, the Vaccination Mandate has no real or substantial relation to public health or is beyond all question, a plain, palpable invasion of rights secured by the fundamental law as to those Plaintiffs with natural immunity. It is therefore unconstitutional regardless of which standard of review is applied.

53. Pursuant to 28 U.S. Code §§ 2201-02 and other applicable law, Plaintiffs are entitled to a declaration that the Vaccine Mandate was unlawful and any further relief which may be appropriate.

## DECLARATORY RELIEF BASED ON 42 U.S.C. §1983
## THE SUPREMACY CLAUSE, ARTICLE VI, CLAUSE 2 -
## UNITED STATES CONSTITUTION

54. Plaintiff re-alleges all allegations set forth elsewhere in this Complaint as if fully set forth herein.

55. Article VI, Clause 2 of the United States Constitution provides as follows:

   *This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.*

56. The CMS Mandate is binding federal regulation that supersedes and preempts any state laws conflicting with it.

57. UPSTATE is subject to the CMS Mandate, which requires healthcare facilities receiving Medicare and/or Medicaid to ensure that staff are vaccinated from COVID-19.

58. Upon the modification of §2.61, which became effective on November 24, 2021, UPSTATE and countless other healthcare facilities located in the State of New York, refused to

accept any requests for religious exemptions in connection with §2.61 from individuals who work in healthcare facilities in New York State and interact with patients.

59. UPSTATE and countless other healthcare facilities located in the State of New York elected to disregard the applicability of the CMS Mandate which is binding legally enforceable federal law.

60. UPSTATE and countless other healthcare facilities located in the State of New York elected to seek compliance with §2.61 which does not allow religious exemptions from mandatory COVID-19 vaccination requirement for healthcare workers who interact with patients.

61. §2.61 is in violation of the Supremacy Clause based on the exclusion of any religious exemption requests which directly conflicts with the CMS Mandate.

62. As a direct result of the actions of Defendant, its agents and affiliates in violation of the Supremacy Clause, Plaintiff has suffered and will continue to suffer harm.

63. Plaintiff therefore seeks a declaration that §2.61 violates the Supremacy Clause.

64. Plaintiff also seeks a permanent injunction prohibiting Defendant, its agents and affiliates from refusing to accept and grant religious exemptions from §2.61 for individuals who work in settings with healthcare personnel and patients, but require a reasonable accommodation due to their religious beliefs.

**WHEREFORE**, the Plaintiff prays that this Court grant judgment to her containing the following relief:

1. A declaratory judgment that the Defendant violated Plaintiff's liberties protected by the Fourteenth Amendment to the Constitution, which includes rights of personal autonomy, self- determination, bodily integrity and the right to reject medical treatment;

2. A declaratory judgment that Defendant's mandate violated the SUPREMACY CLAUSE, ARTICLE VI, CLAUSE 2 of the UNITED STATES CONSTITUTION.

3. An award to Plaintiff of immediate reinstatement of compensatory damages for the Plaintiff's lost wages, back pay, front pay, overtime, and benefits, in an amount to be determined at trial, but in any event in excess of the jurisdictional limit of any other court which might otherwise have jurisdiction over this matter,;

4. An award to Plaintiff of compensatory damages for the pain and suffering, humiliation, mental anguish, damages to reputation and livelihood, and emotional distress sustained by her in an amount to be determined at trial, but in any event in excess of the jurisdictional limit of any other court which might otherwise have jurisdiction over this matter;

5. An award to Plaintiff for costs in this action, including reasonable attorney's fees and expert fees under the Federal Law;

6. An award of pre- and post-judgment interest on all amounts awarded to the Plaintiff at the highest rates and from the earliest dates allowed by law on all causes of action; and

7. Such other and further relief this Court may deem just and proper.

Dated: Syosset, New York
September 25, 2024

        **THE MERMIGIS LAW GROUP, P.C.**
        *Attorneys for Plaintiff*

        */s/ James Mermigis*
        _____
        By: James G. Mermigis, Esq.
        85 Cold Spring Road, Suite 200
        Syosset, NY 11791
        (516) 353-0075